UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SOUTHERN UNITED STATES TRADE ASSOCIATION | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-1669 |
| | * | |
| UNIDENTIFIED PARTIES | * | SECTION "L" (4) |

ORDER & REASONS

Before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 34) and a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Rec. Doc. No. 31), both filed by Defendant Sumit Guddh. The Court has reviewed the submitted memoranda and the applicable law. For the following reasons, both motions are denied.

I. BACKGROUND AND PRESENT MOTIONS

This case arises out of allegedly defamatory statements posted by Defendant Sumit Guddh on various Internet websites. In its Amended Complaint, Plaintiff Southern United States Trade Association (SUSTA) states that it is a Louisiana nonprofit corporation that provides assistance to U.S. businesses in exporting food and agricultural products. Plaintiff Jerry Hingle is identified as the executive director of SUSTA, and Plaintiff Bernadette Wiltz is identified as the deputy director. Plaintiffs allege that since April 2010, Defendant has posted numerous defamatory statements about them on several websites, all with the intent to tarnish their reputation. Plaintiffs have filed suit in this Court, seeking damages and an injunction barring Defendant from engaging in the alleged tortious conduct.

Defendant has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 34). Defendant argues that there is an absence of diversity of citizenship and of the

1

requisite amount in controversy. According to Defendant, there is no diversity of citizenship because SUSTA has represented itself on its website as an association of the departments of agriculture of various states, including the Florida Department of Agriculture and Consumer Services. Defendant argues that there is no complete diversity because he is also a resident of Florida. With respect to the amount in controversy, Defendant contends that Plaintiff's mere allegation that the amount exceeds $75,000 is insufficient to establish jurisdiction.

Defendant has also filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Rec. Doc. No. 31). Defendant argues that under the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), he does not have the minimum contacts with Louisiana for this Court to assert jurisdiction over him. Defendant emphasizes, among other things, that the contents of the allegedly defamatory statements are not focused on Louisiana and that SUSTA's operations extend to a number of states other than Louisiana. Defendant argues that under these circumstances, personal jurisdiction is lacking, and a dismissal is appropriate. In the alternative, Defendant requests a transfer of venue under 28 U.S.C. 1391(a) or 28 U.S.C. 1404(a).

Plaintiffs oppose both motions. With respect to subject matter jurisdiction, Plaintiffs state that SUSTA is a Louisiana corporation with its principal place of business in Louisiana. Accordingly, Plaintiffs argue that there is complete diversity. Plaintiffs also note that under the "legal certainty" test for the amount in controversy, the inquiry is simply whether they have pled in good faith that the amount in controversy exceeds $75,000. Plaintiffs state that they have done so and that, as a result, there is diversity jurisdiction. With respect to personal jurisdiction, Plaintiffs assert that Defendant's prior dealings with SUSTA, and the contents of his statements,

make it clear that Defendant's statements were expressly aimed at Louisiana. Plaintiffs argue that as a result, personal jurisdiction is present. Finally, Plaintiffs argue that venue is proper under both 28 U.S.C. 1391(a) and 28 U.S.C. 1404(a).

## II. LAW AND ANALYSIS

### A. Subject Matter Jurisdiction

#### 1. Standard of review

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can present either a facial attack or a factual attack. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.*

When presented with a factual attack, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Thus, a court's disposition of a motion to dismiss for lack of subject-matter jurisdiction may rest "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

#### 2. Diversity of citizenship

In support of its argument that this Court lacks subject matter jurisdiction, Defendant has

put forward the notion that SUSTA is not a corporation within the meaning of 28 U.S.C. § 1332(c)(1), but rather an unincorporated association. Defendant argues that, as a result, complete diversity of citizenship is lacking because both he and the Florida Department of Agriculture are citizens of Florida for the purposes of diversity. The Court cannot find this argument persuasive because it rests on the faulty assumption that whether an entity is a corporation is a determination to be made independently of the state law under which the entity is organized.

Although the Fifth Circuit does not appear to have spoken on this precise question, the circuits that have considered the issue have held that the determination of whether an entity is a corporation within the meaning of the diversity statute is made by reference to the state law under which the entity is organized. *See, e.g.*, *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1182 (9th Cir. 2004); *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983); *Brocki v. Am. Express Co.*, 279 F.2d 785, 786 (6th Cir. 1960). Thus, even if an entity has features that may be characteristic of an unincorporated association, so long as it is recognized as a corporation under state law, it is a corporation within the meaning of the diversity statute. *See, e.g.*, *Kuntz*, 385 F.3d at 1182. As the Seventh Circuit has said, "a corporation is a corporation is a corporation." *Cote*, 796 F.2d at 983.

In light of this, the fact that SUSTA has represented itself on its website as an association of the departments of agriculture of various states is besides the point. What is controlling is whether, under the state law under which SUSTA is organized, it is a corporation. Here, it is undisputed that SUSTA is a corporation under Louisiana law. SUSTA's articles of incorporation expressly invoke the Louisiana statutes that govern nonprofit corporations, and the articles state that SUSTA is incorporated thereunder. *See* Pl.'s Ex. A (Rec. Doc. No. 36-1).

4

SUSTA is therefore a corporation for the purpose of diversity jurisdiction.

Because it is also undisputed that SUSTA has its principal place of business in Louisiana, the Court finds that SUSTA is a citizen of Louisiana within the meaning of the diversity statute. *See* 28 U.S.C. § 1332(c)(1) (providing that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). Accordingly, there is complete diversity of citizenship to support diversity jurisdiction over this case. *See generally Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806).

### 3. Amount in controversy

Defendant has also asserted that the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a). This contention is also without merit. In general, "[i]n order for a federal court to decline jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). If a plaintiff makes an allegation in the complaint regarding the amount in controversy, that allegation "controls if [it] is apparently made in good faith." *St. Paul Mercury*, 303 U.S. at 288. In this case, Plaintiffs have alleged in their Amended Complaint that the amount in controversy exceeds $75,000, and Defendant has not argued that Plaintiffs have done so in bad faith. Accordingly, this claim is controlling.

In his motion, Defendant argues that it is legally certain that the amount in controversy does not exceed $75,000 because, under Louisiana law, a business entity cannot recover damages for personal humiliation, embarrassment, and mental anguish. This suggestion is

unavailing. The Louisiana courts have recognized that corporations may be defamed. *McConathy v. Ungar*, 765 So.2d 1214, 1218 (La. Ct. App. 2d Cir. 2000); *Gorman v. Swaggart*, 524 So.2d 915, 919-20 (La. Ct. App. 4th Cir. 1988). And it is axiomatic that – apart from personal humiliation, embarrassment, and mental anguish – a victim of defamation may also recover damages for injury to reputation and loss of income. *See Costello v. Hardy*, 864 So.2d 129, 141 (La. 2004). Plaintiffs' claim that SUSTA is entitled to these elements of damages, that Mr. Hingle and Ms. Wiltz are each individually entitled to the full complement of damages, and that the sum of all of these exceeds $75,000 is therefore sufficient to satisfy the amount-in-controversy requirement.

In his motion, Defendant further complains that Plaintiffs have not gone beyond their pleading to adduce evidence that would support the recovery of damages in excess of $75,000. This objection is misdirected because the determination as to whether the amount-in-controversy requirement has been satisfied may rest on the allegations contained in "the complaint alone." *Barrera-Montenegro*, 74 F.3d at 659. Finally, Defendant argues that the statements at issue are not defamatory and that as a result, Plaintiffs may not recover damages. This contention goes beyond the question of subject matter jurisdiction and reaches into the merits of the case. Given that a ruling on subject matter jurisdiction "is not a determination of the merits," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), the Court cannot accept Defendant's invitation to probe into the merits of the case at this time.

In sum, given that there is both complete diversity of citizenship and a sufficient amount in controversy, the Court is satisfied that it has subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter

Jurisdiction must be denied.

**B. Personal Jurisdiction**

    **1. Standard of review**

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). This means that "[p]roof by a preponderance of the evidence is not required." *Id.* In addition, it means that "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts . . . must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *accord Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (noting that "even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts").

    **2. Minimum contacts**

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located." *Walk Haydel*, 517 F.3d at 242. Louisiana's "long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 365 (5th Cir. 2010). "The exercise of personal jurisdiction can thus be maintained if the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," *Access Telecom, Inc. v. MCI*

*Telecomms. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), "and if the exercise of jurisdiction over the nonresident defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

"There are two types of minimum contacts: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "Where a defendant has 'continuous and systematic . . . contacts' with the forum state, the court may exercise 'general' jurisdiction over any action brought against that defendant." *Choice Healthcare*, 615 F.3d at 368 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "When the contacts are less extensive, the court may still exercise 'specific' jurisdiction where a 'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Walk Haydel*, 517 F.3d at 243). Here, Plaintiffs have not argued that general jurisdiction exists. Accordingly, the question is whether specific jurisdiction is present.

The leading Supreme Court case on specific jurisdiction in the context of defamation is *Calder v. Jones*, 465 U.S. 783 (1984). In that case, the plaintiff, Shirley Jones, sued a reporter and an editor of the *National Enquirer* in California, seeking to obtain relief for an allegedly defamatory story that the defendants wrote and published in the magazine. *Id.* at 784-85. Both the reporter and the editor were residents of Florida. *Id.* at 785-86. The Supreme Court held that the California court had personal jurisdiction over the nonresident defendants. *Id.* at 789. The Court found it significant that "California [was] the focal point of both the story and of the harm

suffered." *Id.* at 789. The Court explained that "[t]he allegedly libelous story concerned the California activities of a California resident." *Id.* at 788. In addition, "[t]he article was drawn from California sources, and the brunt of the harm . . . was suffered in California." *Id.* at 788-89.

The *Calder* Court was careful to note that it was not relying on the mere fact that injury in California was foreseeable. *Id.* at 789. Rather, the Court found that the defendants "knew that the brunt of [the] injury would be felt by [the plaintiff] in the [forum] state." *Id.* at 789-90. The defendants had, in the Supreme Court's words, "expressly aimed" their allegedly defamatory statements at the state. *Id.* at 789. They had engaged in conduct that was "calculated to cause injury to [the plaintiff] in California." *Id.* at 791. "Under the[se] circumstances," the Court concluded, the defendants "must 'reasonably anticipate being haled into court [in California]' to answer for the truth of the statements made." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court's analysis in *Calder* implicitly recognizes that as a result of rapid changes in technology, an allegedly defamatory statement can now easily reach all corners of the United States. The Court's decision can therefore be viewed as a determination of how to best balance a state's interest in providing its residents with a convenient forum to obtain redress for injuries caused by a nonresident defendant, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), and the defendant's liberty interest in not being subject to suit in a "distant or inconvenient forum" on account of a "fortuitous circumstance," *World-Wide Volkswagen*, 444 U.S. at 292, 295. In particular, the Supreme Court's conclusion in *Calder* that personal jurisdiction was proper reflects the notion that a nonresident defendant's liberty interest is not unduly compromised when the state toward which he "expressly aimed" his allegedly

defamatory statements seeks to exercise jurisdiction over him. *Calder*, 465 U.S. at 789.

As the Fifth Circuit has noted, the Supreme Court's analysis in *Calder* requires a showing that "the forum be the focal point" of both the statements and the harm alleged. *Revell v. Lidov*, 317 F.3d 467, 474 n.48 (5th Cir. 2002). The element that the forum state be the focal point of the statement "must be demonstrated by showing that (1) the subject matter of and (2) the sources relied upon for [the allegedly defamatory statements] were in the forum state." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005); *see also Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010). Meanwhile, the element that the forum state be the focal point of the harm requires a showing that the defendant knew that the "brunt of the harm" would be borne in that state. *Revell*, 317 F.3d at 475. A review of the record in the light most favorable to Plaintiffs indicates that these elements are present in this case.

First, the subject matter of the allegedly defamatory statements is in the forum state. It is undisputed in this case that SUSTA has its principal place of business in Louisiana and that Mr. Hingle and Ms. Wiltz are both residents of Louisiana. As Plaintiffs point out,[1] the alleged statements, in turn, refer to sexual and other misconduct on the part of Plaintiffs at SUSTA's offices in New Orleans and elsewhere in the city. Pls.' Ex. F, G & H (Rec. Doc. No. 36-2). One alleged posting further states that "SUSTA is like the kukuz clan [sic], just that SUSTA . . . is out of Louisiana." Pls.' Ex. I (Rec. Doc. No. 36-2). Similarly, one alleged statement characterizes a SUSTA employee as a "theif [sic] and a liar" and asks that he get "out of

---

[1] The Court granted Plaintiffs' motion to file under seal exhibits F-J, which were attached to Plaintiffs' opposition to Defendant's motions to dismiss. The following reflects the statements that Plaintiffs have themselves included in their opposition memorandum, which remains unsealed. At this point, the Court does not find it necessary to rely on other statements that appear in the sealed exhibits.

Louisiana." Pls.' Ex. J (Rec. Doc. No. 36-2). The subject matter of the allegedly defamatory statements is clearly focused on Louisiana. *Compare Calder*, 465 U.S. at 788 ("The allegedly libelous story concerned the California activities of a California resident.").

Second, the record also demonstrates that the "sources relied upon . . . were in the forum state." *Fielding*, 415 F.3d at 426. The statements refer to the writer's own observations of the alleged misconduct in Louisiana, *see* Pls.' Ex. F, G & H (Rec. Doc. No. 36-2), and indicate that the writer has also relied on other sources in Louisiana for the alleged facts, *see* Pls.' Ex. H (Rec. Doc. No. 36-2). If one were to assume that Defendant simply conjured up the defamatory statements, it remains the case that what inspired Defendant to do so was his prior interactions with SUSTA and its employees in Louisiana. Indeed, it is undisputed in this case that Defendant sought to obtain assistance from SUSTA and that this experience led Defendant to write and publish the allegedly defamatory statements. *See* Pls.' Ex. B-E (Rec. Doc. No. 36-1). Defendant is not unlike the reporter in *Calder*, who "did most of his research in Florida, relying on phone calls to sources in California . . . ." *Calder*, 465 U.S. at 785.

Third, the record supports the finding that the defendant knew that the "brunt of the harm" would be borne in that state. *Revell*, 317 F.3d at 475. As noted above, prior to posting the allegedly defamatory statements, Defendant unsuccessfully tried to secure assistance from SUSTA, and as a result of that interaction, Defendant came to know that Plaintiffs reside and work in Louisiana. *See* Pls.' Ex. B-E (Rec. Doc. No. 36-1). Moreover, as noted above, the focus of the allegedly defamatory statements is on the Louisiana activities of Plaintiffs, who reside and work in Louisiana. Under these circumstances, it is fair to say that Defendant "knew that the brunt of [the] injury would be felt by [Plaintiffs] in the [forum] state." *Calder*, 465 U.S. at 789-

90; *see also Revell*, 317 F.3d at 476 (noting that a showing that the forum state is "the focal point

of the tortious act . . . will ofttimes provide sufficient evidence" that the defendant knew that the

harm will be primarily borne in that state). In sum, a review of the record in the light most

favorable to Plaintiffs supports the finding that Defendant "expressly aimed" his acts toward the

forum state. *Calder*, 465 U.S. at 789. Accordingly, there are sufficient minimum contacts to

support the Court's exercise of specific jurisdiction.

 In his motion, Defendant advances four principal arguments, but none are persuasive.

First, Defendant draws attention to the fact that some of the allegedly defamatory statements do

not explicitly refer to Louisiana. Although this is true, it does not detract from the fact that, when

the record is viewed in the light most favorable to Plaintiffs, the "focal point" of the allegedly

defamatory statements is Louisiana. *Id.* In *Calder*, the Supreme Court did not hold that all

defamatory statements must specifically address only the forum state for personal jurisdiction to

be proper. *See id.* And neither has the Fifth Circuit suggested that such a requirement exists.

 Second, Defendant argues that there is no personal jurisdiction because the activities of

SUSTA reach into states other than Louisiana. This contention also finds no support in *Calder*.

There, the Supreme Court found it sufficient that "[t]he allegedly libelous story concerned the

California activities of a California resident." *Id.* at 788. The career of the alleged victim, the

Court noted, "was centered in California." *Id.* The Court clearly found it irrelevant that the

victim, who was of national renown, almost certainly had a reputation to protect outside of

California. Here, it is undisputed that SUSTA's principal place of business is in Louisiana and

that Mr. Hingle and Ms. Wiltz reside and work in Louisiana. Moreover, as noted above, the

focus of the allegedly defamatory statements is Louisiana. In light of *Calder*, the fact that

12

SUSTA's activities may reach into other states does not preclude personal jurisdiction.[2]

Third, Defendant also contends that there is no personal jurisdiction because the websites on which the allegedly defamatory statements were posted are viewable at any location where the Internet is available. This assertion is also unavailing. In *Calder*, the medium that contained the allegedly defamatory statements – the *National Enquirer* – was a national publication that had only about one-tenth of its circulation in California. *See id.* at 785 n.2. In other words, the vast majority of the magazine's readership was outside of the forum state. This fact did not preclude the Supreme Court from concluding that personal jurisdiction was proper. In light of this, the possibility in this case that many of the websites' readers reside outside of Louisiana does not compel the conclusion that there are no minimum contacts.

In addition, it should be noted that Defendant's argument appears to sweep too broadly. Indeed, any statement on the Internet is, almost by definition, viewable at any location where the Internet is available. As a result, if the Court were to accept Defendant's argument, it would, in effect, be endorsing the bright-line rule that in a case alleging defamation on the Internet, the only state that has personal jurisdiction over the defendant is the state where the defendant resides. Neither *Calder* nor Fifth Circuit precedent indicates that this is what the law requires. Moreover, such a bright-line rule is inconsistent with the fact that the Supreme Court has long eschewed "'mechanical' tests" for determining personal jurisdiction. *Burger King*, 471 U.S. at

---

[2] It also bears noting that Defendant's argument, taken to its logical end, may yield a potentially strange result. Assume, for instance, that an individual writes an allegedly defamatory story about one Wal-Mart store in a particular state and that he does not himself reside in that state. Under Defendant's reasoning, the courts of that state would not have personal jurisdiction over the defendant – even though the story is squarely focused on that one store in the state – simply because Wal-Mart has a nationwide business presence. The Court is unable to conclude that *Calder* or Fifth Circuit precedent would require this result.

478 (quoting *Int'l Shoe*, 326 U.S. at 319).

To be sure, Defendant could be making the more modest point that the *specific* website or publication that carries the allegedly defamatory statement must somehow focus on the forum state. In other words, Defendant could be suggesting that the target audience of the website or publication is pertinent to the inquiry. It is true that this notion finds some support in *Calder* and in Fifth Circuit precedent. *See, e.g.*, *Calder*, 465 U.S. at 790 (observing that the *National Enquirer* "had its largest circulation in California"); s*ee also Fielding*, 415 F.3d at 427 (finding it significant that 97 percent of the magazines were sold in Germany, and not the forum state of Texas). But as an initial matter, it is important to note that the Supreme Court has set a fairly low standard by which to measure whether a publication has the forum state as its primary audience. Indeed, even though the Supreme Court in *Calder* found that the magazine "had its largest circulation in California," *Calder*, 465 U.S. at 790, the state, as noted above, accounted for only about one-tenth of the magazine's circulation, *id.* at 785 n.2.

More significantly, however, it is worth observing that neither the Supreme Court nor the Fifth Circuit has squarely held that personal jurisdiction is improper whenever a website or publication does not have the forum state as its target audience. Indeed, such a holding would, in effect, signify that in a case where the website or publication happens to have its largest audience outside of the forum state, the only courts that have personal jurisdiction over the defendant are the courts of that state or of the state where defendant resides. Neither *Calder* nor Fifth Circuit precedent endorses such a bright-line rule. At most, the cases suggest that the target audience of the website or of the publication as a whole is only one factor that – along with the content and the subject matter of the statements themselves – could illuminate the extent to which the

14

allegedly defamatory statements are "expressly aimed" at the forum state. *Id.* at 789. The case law does not indicate that the medium's target audience, alone, controls the analysis.

In this case, even if one were to assume *arguendo* that the websites on which the allegedly defamatory statements were posted did not have their largest audience in Louisiana,[3] it remains the case that the "focal point" of the statements were Louisiana and that they were "expressly aimed" at Louisiana. *Id.* at 789. As noted above, the alleged statements describe various forms of misconduct on the part of Plaintiffs in New Orleans, Louisiana, including at SUSTA's offices in the city. And the record shows that what inspired Defendant to write and publish these statements was his interaction with Plaintiffs in Louisiana. Moreover, it is undisputed that when Defendant decided to engage in the allegedly tortious conduct, he knew that Plaintiffs reside and work in Louisiana. The record thus supports the finding that the statements were "expressly aimed" at the forum state. *Id.*

Fourth and finally, Defendant argues that the websites on which the allegedly defamatory statements were posted are passive websites, and not interactive websites. The idea that passive and interactive websites must be distinguished in the personal jurisdiction inquiry was first articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997). That case involved a dispute over an Internet domain name in which the defendant was a website operator. *See id.* at 1120-21. The court there concluded that "[a] passive Web site that does little more than make information available to those who are interested in it is not

---

[3] Defendant has stated in his affidavit that according to his "understanding," the websites are viewable at any location where the Internet is available. *See* Def.'s Aff. (Rec. Doc. No. 31-2). Defendant has not otherwise provided any material to show that Louisiana is not a primary audience of the websites.

grounds for the exercise of personal jurisdiction." *Id.* at 1124. In cases involving interactive websites, however, "the exercise of jurisdiction is determined by examining the level of interactivity and [the] commercial nature of the exchange of information that occurs on the Web site." *Id.*

Fifth Circuit precedent casts substantial doubt on the proposition that the distinction between passive and interactive websites is of such significance that it demands a different outcome in this case. To be sure, the Court of Appeals has held, in one case, that the distinction between passive and interactive websites is relevant. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). But that case involved a copyright and patent infringement case, and not a defamation case that is clearly governed by the Supreme Court's decision in *Calder*. *See id.* at 335. And in *Revell*, the Fifth Circuit suggested that the *Zippo* framework maybe relevant in ascertaining whether there are minimum contacts in an Internet defamation case. *See Revell*, 317 F.3d at 472. But, as in *Zippo*, one of the defendants in that case was a website operator. *See id.* at 469. Thus, in evaluating the nature of the website to determine whether there were sufficient contacts with the forum state, the court, in line with the court in *Zippo* itself, appeared to have in mind the question of personal jurisdiction over the website operator. *See id.* at 472.

To be sure, *Revell* also involved a defendant who simply availed himself of the website to post an allegedly defamatory article that he had authored. *See id.* at 469. As a result, the Fifth Circuit's analysis could be understood as suggesting that whether a website is interactive is relevant in the inquiry with respect to a defendant who is not a website operator. *See id.* at 472. This notion, however, is substantially undercut by the subsequent analysis in *Revell* itself. Indeed, although the court at first stated that the interactivity of the website was a relevant factor,

its subsequent analysis gave little consideration to that factor and instead closely tracked the reasoning in *Calder*. *See id.* at 473-76. The court drew upon defamation cases that did not involve the Internet and treated them on the same basis as one case that did. *See id.* And ultimately, it found to be dispositive the fact that the individual defendant did not know that the brunt of the harm would be sustained in the forum state of Texas and that the subject matter of the article was not focused on Texas. *See id.*

The Fifth Circuit's analysis in *Revell* thus indicates that, at best, the interactivity of the website is only a single, non-dispositive factor in resolving the question of personal jurisdiction, one that does not outweigh the factors that are crucial under *Calder*. At worst, it demonstrates that whether a website is passive or interactive is simply not a relevant consideration. In other words, the reasoning in *Revell* suggests that "the analysis applicable to a case involving jurisdiction based on the Internet . . . should not be different at its most basic level from any other personal jurisdiction case." 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1073.1 (3d ed. 2004); *see also id.* (noting that "[a]lthough the Internet and the other new communications technologies do present some strikingly new factual patterns . . . , little substantive doctrine should be affected").

Defendant's argument that he is not subject to personal jurisdiction because the websites at issue are passive is therefore unavailing. Indeed, whether a website is passive or interactive is not determinative of the inquiry. And even if it is one factor that is to be taken into account, it does not displace the crucial considerations under *Calder*: whether the alleged defamation, as measured by its subject matter and its sources, was "expressly aimed" at the forum state and whether the defendant knew that the "brunt of the harm" would be sustained in the forum state.

17

*Calder*, 465 U.S. at 789. Here, the basic requirements of *Calder* are present in this case. Accordingly, even if one were to assume *arguendo* that the websites at issue are passive websites as contemplated by *Zippo*,[4] that fact does not warrant the conclusion that there is no personal jurisdiction in this case.

It is true that since it decided *Revell* in 2002, the Court of Appeals has not had the opportunity to revisit the subject of personal jurisdiction in an Internet defamation case. Thus, the Fifth Circuit may take the law in a different direction and attach more significance to the distinction between passive and interactive websites. It should be noted, however, that recently, other circuits have cast doubt on such a notion. For instance, the Seventh Circuit has "expressly declined" to make *Zippo* controlling and held that the minimum contacts analysis should be performed "without resorting" to *Zippo* at all. *See Illinois v. Hemi Group, LLC*, 622 F.3d 754, 758-59 (7th Cir. 2010). Meanwhile, the Tenth and Second Circuits have suggested that *Zippo* should, at best, be used "as a heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis." *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011); *accord Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007).

There are at least two reasons for this reluctance to make *Zippo* controlling. First, as the Seventh Circuit has stated, "[l]ong before the Internet became a medium for defamation, the

---

[4] According to Defendant, the websites at issue are "passive" because "they are simply websites where ideas and comments are posted, and people generally do not transact business on either of them." Def.'s Aff. (Rec. Doc. No. 31-2). It should be noted, however, that not all Internet bulletin boards are passive websites. In *Revell*, the Fifth Circuit found the Internet bulletin board to be interactive because "individuals *send* information to be posted and *receive* information that others have posted." *Revell*, 31 F.3d at 472. The fact that "the visitor may participate in an open forum hosted by the website" led the Court of Appeals to find that the website was interactive. *Id.*

Supreme Court in *Calder v. Jones* had decided the relevant jurisdictional standard" for cases alleging defamation. *Hemi Group*, 622 F.3d at 758-59 (internal citation omitted). Moreover, there is no reason to believe that *Calder* cannot be applied in the context of the Internet or that, if applied, *Calder* cannot adequately safeguard the due process liberty interest that undergirds the personal jurisdiction analysis. *See id.* Certainly, in this case, Defendant has not urged such arguments. Thus, there is no reason at this time to supplement or otherwise modify the analytical framework established by the Supreme Court in *Calder*.

Second, as the Eleventh Circuit has observed, "scholars have generally been critical of the *Zippo* construct." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210 n.26 (11th Cir. 2009). In particular, it has been noted that "*Zippo*'s interactivity litmus test is inconsistent with traditional due process analysis." *Id.* This is because "it excludes all 'passive' websites from supporting personal jurisdiction even though the level of [website] interactivity [may be] of minimal significance with respect to whether a defendant has directed [his alleged tortious act] toward the forum." *Id.* (citing A. Benjamin Spencer, *Jurisdiction and the Internet: Returning to Traditional Principles to Analyze Network-Mediated Contacts*, 2006 U. Ill. L. Rev. 71, 86-103 (2006)). All of these reasons support the conclusion that the passive nature of a website should not, of its own force, preclude personal jurisdiction.

Ultimately, the Court is satisfied that exercising personal jurisdiction in this case is consistent with the underlying purposes of the Due Process Clause. This is not a case where the defendant does not know that the plaintiffs reside and work in the forum state. *Compare Revell*, 317 F.3d at 475 (finding no personal jurisdiction because the defendant stated that "he did not even know that [the plaintiff] was a resident of Texas"). Nor is this a case where the allegedly

19

defamatory statements are squarely focused on activities occurring outside of the forum state. *Compare Clemens*, 615 F.3d at 380 (finding no personal jurisdiction because the statements "concerned non-Texas activities – the delivery of performance-enhancing drugs to [the plaintiff] in New York and Canada"); *Fielding*, 415 F.3d at 426 (finding no personal jurisdiction because "[t]he clear focus" of the allegedly defamatory articles was an affair "which occurred in Germany and Switzerland").

Rather, as discussed above, the record, when it is viewed in the light most favorable to Plaintiffs, demonstrates the following. First, in the course of unsuccessfully obtaining assistance from SUSTA, Defendant came to know that SUSTA and its employees reside and work in Louisiana. Second, because of his dissatisfaction with that experience, Defendant decided to draw upon that very experience and write and publish the allegedly defamatory statements. And third, these statements assert a variety of misconduct in Louisiana on the part of SUSTA and its employees. The record therefore belies the notion that Defendant's connection with Louisiana is "random, fortuitous, or attenuated." *Burger King Corp.*, 471 U.S. at 474 (internal quotation marks omitted). Instead, the record shows that Defendant intentionally engaged in conduct that was "calculated to cause injury to [Plaintiffs] in [Louisiana]." *Calder*, 465 U.S. at 791.

As the Supreme Court has recognized, when a nonresident defendant has engaged in such conduct, he "must 'reasonably anticipate being haled into court [in the forum state]' to answer for the truth of the statements made." *Id.* at 790 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). The Due Process Clause, it is worth remembering, aims only to guard against the possibility that a defendant is subject to suit in a forum on account of a "fortuitous circumstance." *World-Wide Volkswagen*, 444 U.S. at 295. The clause may not invariably be

"wielded as a territorial shield to avoid interstate obligations . . . ." *Burger King*, 471 U.S. at 474.

Because the record in this case supports the finding that Defendant "expressly aimed" his

allegedly defamatory statements at Louisiana and that he did so in order to injure Plaintiffs in

Louisiana, *Calder*, 465 U.S. at 789, the Court finds that there are sufficient minimum contacts to

support specific jurisdiction.

### 3. Reasonableness of exercising jurisdiction

"When a plaintiff makes a prima facie case that the defendant has 'minimum contacts'

with the forum state, the burden of proof shifts to the defendant to show that the exercise of

jurisdiction would be unreasonable." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th

Cir. 2006). "To evaluate the reasonableness of exercising jurisdiction," a court considers "(1) the

burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the

plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the

several states." *Johnston*, 523 F.3d at 615. "It is rare to say [that] the assertion [of jurisdiction] is

unfair after minimum contacts have been shown." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208,

215 (5th Cir. 1999) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995)).

Although Defendant has referred to the inconvenience of litigating this suit in this Court

as part of his arguments on venue, he has inexplicably failed to address this second prong of the

personal jurisdiction inquiry on its own terms. Given that the burden is on the defendant to

"make a 'compelling case' that traditional notions of fair play and substantial justice would be

violated by the exercise of jurisdiction," *Johnston*, 523 F.3d at 615 (quoting *Wien Air Alaska*,

195 F.3d at 215), the Court cannot at this time conclude that Defendant has made an adequate

showing as to this component of the personal jurisdiction inquiry. This is especially so because,

as noted above, the exercise of personal jurisdiction is presumed to be reasonable once it is shown that minimum contacts are present. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction must be denied.

## C. Venue

Defendant has raised two arguments with regard to venue. First, Defendant asserts that venue in this district is improper under 28 U.S.C. § 1391(a) and that accordingly, a transfer is warranted under 28 U.S.C. § 1406. Second, Defendant suggests that even if venue is proper under 28 U.S.C. § 1391(a), the Court should exercise its discretion to transfer the case under 28 U.S.C. § 1404(a). The Court will discuss these in turn.

### 1. Improper venue under 28 U.S.C. § 1391

The general venue statute provides, in relevant part, that a diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). In his motion, Defendant argues that the "events" that gave rise to Plaintiffs' claims consist of postings on the Internet made in Florida and that as a result, venue is proper only in Florida. Defendant's contention is not persuasive. Under 28 U.S.C. § 1391(a)(2), "venue can be appropriate in more than one district," and venue in one district is proper "as long as 'a substantial part' of the underlying events took place" there. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005); *accord Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-66 (10th Cir. 2010).

In tort cases, courts consider both "the place where the allegedly tortious actions occurred" and "the place where the harms were felt" in determining "whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred . . . in the district." 14D

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806.1 (3d ed. 2004). As noted above, the brunt of the alleged injury in this case was sustained in this district. Moreover, it was Defendant's alleged prior interactions with Plaintiffs in New Orleans that inspired Defendant to write and publish the statements. While one of the judicial districts in Florida might also be a proper venue,[5] it is apparent at this time that "a substantial part of the events" also occurred in this district. 28 U.S.C. § 1391(a)(2). Accordingly, venue is proper, and Defendant's request for a transfer under 28 U.S.C. § 1406 must be denied.

## 2. Transfer of venue under 28 U.S.C. § 1404(a)

Defendant also requests a transfer of venue under 28 U.S.C. § 1404(a). That statute specifies that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). Under this provision, a court is to examine a number of factors, including the convenience of the witnesses, the convenience of the parties, the interest of the forum in the controversy, and the choice of law. *See Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 608 (E.D. La. 2000). "The moving party bears the burden of demonstrating that the case should be transferred to an alternate forum." *Id.* "[U]nless the balance is strongly in favor of the defendant . . . , the plaintiff's choice of forum is not to be disturbed." *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 517 (5th Cir. 1981).

Here, Defendant has not carried his burden to deprive Plaintiffs of their choice of forum.

---

[5] Defendant has failed to specify which judicial district in Florida would be the proper venue. The Court can only speculate at this time that the Southern District of Florida might be the venue sought by Defendant given that he executed an affidavit filed in support of his motion in Fort Lauderdale, Florida.

First, Defendant emphasizes that the router through which the statements were posted on the Internet and that as a result, the majority of witnesses will be from Florida. This is not a persuasive contention. A central component of Plaintiffs' defamation claims – that the alleged facts asserted are false – will likely involve witnesses in Louisiana. Indeed, the subject matter of Defendant's statements concerns alleged misconduct on the part of Plaintiffs in Louisiana. Another key element of Plaintiffs' claims – that their reputation has been injured – will also likely involve witnesses in Louisiana: SUSTA's principal place of business is in New Orleans, and Mr. Hingle and Ms. Wiltz work and reside in Louisiana. It is apparent therefore that the convenience of the witnesses will be equally, if not better, served by having the case be adjudicated in this district.[6]

Second, Defendant states that it will be highly costly and inconvenient for him to litigate this suit in this district and that, in contrast, the burden on Plaintiffs of pursuing their claims in Florida will be minimal. Defendant has not, however, provided any material to substantiate this assertion, and as a result, it does not constitute a sufficient basis upon which to deprive Plaintiffs of their choice of forum. Third, Defendant states that Florida and Louisiana share an equal interest in this litigation. This contention neglects the fact that as noted above, the brunt of the alleged harm has been sustained in Louisiana. Moreover, as evidenced by their arguments regarding the amount in controversy, the parties have assumed that Louisiana law is applicable.

---

[6] It should also be noted that although there is evidence that the router through which the allegedly defamatory statements were posted on the Internet was in Florida, the corporate records regarding the relevant Internet activity appear to be kept by AT&T Internet Services in Atlanta, Georgia, or San Antonio, Texas. *See* Def.'s Ex. to Reply (Rec. Doc. No. 42-1). Thus, witnesses and documents that might be needed to ascertain the source of the statements may have to come from those localities, and not Florida.

The Court therefore finds that at this juncture, Louisiana has a stronger interest in this case than Florida.

In sum, Defendant has not identified circumstances that "clearly point" to Florida as the more convenient and appropriate forum. *Laitram Corp.*, 120 F. Supp. 2d at 608. As a result, there is an insufficient basis upon which to disturb Plaintiffs' choice of forum, and Defendant's request to change venue under 28 U.S.C. § 1404(a) must be denied.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. No. 34) and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue (Rec. Doc. No. 31) are hereby **DENIED**.

New Orleans, Louisiana, this 15th day of June, 2011.

UNITED STATES DISTRICT JUDGE