UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN UNITED STATES TRADE ASSOCIATION, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-1669** |
| **SUMIT GUDDH, ET AL.** | **SECTION: "L" (4)** |

<u>**ORDER**</u>

Before the Court is Plaintiffs, Southern United States Trade Association, et al.'s, ("Southern") **Plaintiffs' Motion to Compel Deposition and for Discovery Sanctions (R. Doc. 173)**, which seeks to compel the in-person deposition of Defendant, Sumit Guddh ("Guddh"), as well as for attorney's fees incurred in bringing the instant motion. The motion is opposed (R. Doc. 175).[1] The motion was heard by oral argument on November 7, 2012.[2]

Also before the Court is Guddh's **Motion to Compel Depositions (R. Doc. 164)**, seeking an Order from this Court requiring Southern to produce certain individuals for depositions. The motion is unopposed. The motion was heard by oral argument on November 7, 2012.[3]

---

[1]Because the Court granted Guddh's motion to expedite consideration, the fact that Southern's opposition was filed earlier than 8 days prior to the hearing date is immaterial to its timeliness under Local Rule 7.5.

[2]R. Doc. 173 was originally noticed for submission on November 21, 2012. Subsequently, Southern filed a motion to expedite consideration (R. Doc. 176). The Court granted the Motion. (R. Doc. 178).

[3]R. Doc. 164 was originally noticed for submission on Wednesday, November 14, 2012. Subsequently, Guddh filed a motion to expedite consideration (R. Doc. 165). The Court granted the motion. (R. Doc. 166).

## I.    __Background__

This is a defamation lawsuit brought by Plaintiffs against Guddh and his co-defendant, Yunaysis Mata ("Mata").  (R. Doc. 78-4, pp. 3-4).[4]  In its Complaint, Plaintiffs allege that they are in the business of providing assistance to U.S. exporters of high-value food and agricultural products, and their business success depends in large part on their reputation for honesty, as well as the goodwill and confidence of the general public and its business partners.  *Id.* at 2.  Plaintiffs allege that since April 28, 2010, defendant Guddh has posted at least 12 times about Plaintiffs and their employees on websites, and the information contained in those postings contained malicious and defamatory accusations and statements of wrongdoing, mismanagement, criminal behavior, and sexual misconduct.  *Id.* at 3.  Plaintiffs allege that Guddh's motivation for making these false statements was to damage Plaintiffs' business reputation.  *Id.*  Plaintiffs have claimed defamation *per se* (count 1), and defamation (count 2).  *Id.* at 4-5.

As to R. Doc. 173, Plaintiffs have requested an Order from the Court requiring Guddh to appear in New Orleans for an in-person deposition, for the deposition to be monitored by the Court, and for attorney's fees in bringing the instant motion.  (R. Doc. 173, p. 1).  As to R. Doc. 164, Guddh seeks to compel the depositions of certain individuals. R. Doc. 164 is opposed (R. Doc. 175), but R. Doc. 173 is not.  Both motions were set for oral argument on November 7, 2011.

## II.    **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the

_____

[4]Plaintiffs duly amended their Complaint on November 15, 2010, and again on November 7, 2011.

discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* at 45(c)(1).  A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Rule 45(c)(3)(A).  A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (I) shows a substantial need for the testimony or

material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."  *Id.* at 45(c)(3)(C).

Rule 37 mandates that upon filing a motion to compel, "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  *Id.* at 37(a)(1). Further, Rule 37 provides for attorneys fees on the adverse party if the motion is denied, but "must not order this payment if the motion was substantially justified or other circumstances make award of expenses unjust."  *Id.* at 37(a)(5)(B).  Further, in a situation where a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  *Id.* at 37(a)(5)(C).

## III.    Analysis

The discovery saga in this case continues.  Deadlines are now looming - a pretrial conference is set for November 20, 2012, and trial is set to commence on December 3, 2012.[5]  During the past month, the Court has ruled on six separate discovery motions.  (R. Docs. 154, 162, 163, 164). However, despite the fact that the case is set for trial, the parties do not appear any closer to resolving the fact-finding process.[6]  Three discovery motions are currently pending before the Court, two of which pertain to compelling the appearance of deponents.  These two motions are the subject of today's Order.

---

[5]The discovery deadline in this case was originally October 22, 2012.  It was extended to November 5, 2012 for purposes of taking depositions.  (R. Doc. 161).

[6]This case has also been subject to numerous motions to quash and motions for leave to file motions to quash by both Guddh and his co-defendant, Mata.  (R. Docs. 127, 128, 136, 155, 156, 166, 167, 172).  These motions are immaterial to the disposition of this Order.

A.      **Guddh's Motion to Compel Discovery (R. Doc. 164)**

In support of his Motion, Guddh argues that Southern has "repeatedly promised, and now have intentionally delayed until too late" production of deponents for the upcoming trial.  (R. Doc. 164-1, p. 1).  Guddh argues that trial will take place on December 3, 2012, and that his requests from Southern have gone unanswered.

In opposition, Southern argues that although it was unable to provide deposition dates for Hingle and Wiltz on the short notice provided by Guddh, it remains willing to produce them.  (R. Doc. 175, p. 6).  Moreover, Southern argues that Guddh has engaged in a pattern of delaying the discovery process, which has prejudiced Southern's ability to prosecute this case, and warrants compelling Guddh's deposition prior to the time that Southern should be obligated to produce its own proposed witnesses.

The emails which Guddh has submitted with his motion appropriately characterize the current tenor of the instant debate.  All spelling, punctuation, and formatting appears as in the original.

On October 11, 2012, Guddh emailed Michael A. Balascio, ("Balascio"), counsel for Southern, and stated, *inter alia*:

> Please provide me with dates (of NO LATER than Oct 17th) for video taped depositions of the following individuals.  The depositions will either be conducted by me or by my attorney (his info will be provided), location of deposition: at your office in new Orleans will be fine
>
> 1- Jerry Hingle
> 2- Bernadette Wiltz
> 3- Brook Parry
> 4- Cindy Martel
> 5- David Gringas
> 6- Stephen Collier

7- Anyone else that maybe testifying at trial

Please respond no later than Oct 12th as time is of the extreme essence.

(R. Doc. 164-2, p. 5).  There is no indication that Guddh ever provided Southern with the name of his "attorney," and as of the date of the hearing on the motion, no attorney of record was enrolled to represent Guddh in the instant case.

On October 12, 2012, Guddh emailed Southern once more, stating:

> This will be my 2nd request as you have failed to respond (see extremely urgent email below) - please respond by the END OF THE BUSINESS DAY TODAY ELSE I WILL BE WRITING TO JUDGE FALLON AND JUDGE ROBY compelling you to respond (as as well as asking more time / extension to depose any and all since we are running out of time due to the direct result of your actions) as time is of the extreme essence and your failure to respond in my belief is not only disrespectful to the honourable court but which will aslo trigger wating Judge Fallons and Judge Roby's time.

(R. Doc. 164-2, p. 4).

On October 17, 2012, Southern responded, stating, *inter alia*, that they only represented Jerry Hingle ("Hingle") and Bernadette Wiltz ("Wiltz"), and were unable to arrange for other depositions. *Id.* at 3.  They also stated that they would not allow their clients to be deposed by any attorney purporting to represent Guddh until that attorney had enrolled in the case.  *Id.*  They also stated that they anticipated providing deposition dates for Hingle and Wiltz by the end of the week.  *Id.*

On October 25, 2012, Guddh again emailed Southern, now stating, apparently directly to Balascio, that "I find you a bully and I do not tolerate rude behavior, I refuse to be deposed by you personally during deposition."  *Id.* at 3.  Guddh further stated that Southern, despite seeking an extension of time to complete discovery, "have yet to respond with the dates when I may depose the Plaintiffs".  *Id.* at 3.  Guddh also stated that "I need the contact information of Cindy Martel . . . please be ethical and provide me with her contact information by the end of the business day today."

*Id.* On October 27, 2012, Guddh emailed Plaintiffs again, stating:

> I have asked you FIVE times verbally and also in writing asking you repeatedly as
> evidenced by the emails below . . . for you to provide me with dates when I can
> depose the Plaintiffs however you are purposefully and persistently ignoring even
> my repeated written requests . . . . Your persistent failure to respond to my repeated
> requests is not only disrespectful to me but likely also to the court.

(R. Doc. 164-2, pp. 1-2). Guddh stated that he was available to "depose the Plainitiffs" on October

31, November 1, and November 2, 2012. *Id.* at 2. Guddh also stated that PLEASE TAKE NOTICE:

Should you fail to CONFIRM deposition dates by 12 noon EST Monday Oct 29th then I will be

formally writing to honorable Judge Fallon to remedy your unethical actions and/or persistent

failures to respond. Please note that an attorney that engages in improper tactics (as you repeatedly

do) can be personally liable with sanctions." *Id.* Guddh then repeated his request for contact

information for Cindy Martel. *Id.*

On October 30, 2012, Southern wrote to Guddh, stating that Gingle and Wiltz were not

available for deposition until late November. *Id.* Southern also stated that although they were

willing to provide deposition dates for their clients, Hingle and Wiltz, they would not produce these

witnesses until they had conducted Guddh's deposition. *Id.* at 1. According to Southern, during

Guddh's deposition he had "provided evasive answers and refused to answer many . . . questions,

improperly invoking the attorney-client privilege." *Id.*

At oral argument, Guddh failed to appear. The Court granted Guddh's motion in part and

denied it in part. Rather than requiring Southern to produce Hingle and Wiltz by November 2, 2012,

as the date had already passed by the time the hearing took place, the Court ordered Southern to

produce Hingle and Wiltz for deposition at Sounthern's attorneys' office on November 30, 2012,

at 10:00 a.m.

B.      <u>Southern's Motion to Compel Deposition and for Sanctions (R. Doc. 173)</u>

In contrast to the urgency by which Guddh demanded production of deponents in R. Doc. 164, Southern argues that it has been trying to schedule Guddh's deposition for almost four months, but has been confounded by Guddh's absence from the country.  (R. Doc. 173).  For example, Guddh first moved to stay the proceeding from February 24, 2012 through April 12, 2012 for this reason.  (R. Doc. 100, p. 1).  The Court granted this request.  (R. Doc. 108).  After the stay expired, Plaintiffs noticed Guddh's deposition for July 10, 2012.  (R. Doc. 118-6, p. 2).  In response, Guddh first referred Southern to a Florida attorney not enrolled in the case, and then, when the lawyer did not respond, Guddh again moved the Court to extend the stay because he "anticipate[d] being absent from the United States for the foreseeable future, with no immediate plans to return."  (R. Doc. 117-1, p. 1).  The Court denied Guddh's Motion to Stay.  (R. Doc. 121).   Plaintiffs then re-noticed Guddh's deposition for August 17, 2012.  (R. Doc. 118-9, p. 2).

Shortly before his deposition was to occur, on August 10, 2012, a status conference before the presiding U.S. District Court Judge took place.  Therein, Guddh stated that he was unable to return to the United States due to financial difficulties.  (R. Doc. 126, pp. 1-2).  In order to accommodate Guddh's apparent financial difficulties, the Court stated that Guddh was to receive one "free" view of each CM/ECF filing.  The Court also ordered that such filings were to be forwarded to Guddh's personal email address.  (R. Doc. 123).  However, during oral argument on prior motions, Guddh stated that he had multiple businesses, and that he worked with a considerable number of attorneys - four of whom he listed to the Court by name.

During the status conference, Guddh declined to give his address to the Court.  (R. Doc. 126, pp. 1-2).  Guddh's stated reason for failing to give his postal address was that delivery at his location

8

was unreliable.  *Id.* at 2.  However, shortly after the status conference Guddh submitted an *ex parte*

letter to the Court on August 14, 2012, which was received by the Court one day later.  (R. Doc.

125-1, p. 1).[7]  The Court then ordered Guddh to disclose his address to the parties.

After being ordered to disclose his location by the Court, Guddh revealed that he was living

in Kaza, Miachal Pradesh, India, a remote, mountainous region of the country which borders Tibet.

(R. Doc. 175, p. 5).[8]  Southern argues that although it spent weeks trying to locate a video

conference service which could facilitate the deposition, they were unable to do so.  *Id.*  Therefore,

Southern noticed Guddh's deposition via telephone.  *Id.*  Guddh's deposition was conducted on

October 26, 2012.  Southern has attached excerpts of Guddh's deposition, in which Guddh testified

that he had been deposed before.  (R. Doc. 175-6, p. 4).  Guddh's testimony begins with the

following exchange:

> Q.    Okay, Mr. Guddh. Would you please state your name for the record?
> A.    Yes. Sumit Guddh.
> Q.    And would you spell that, please?
> A.    Sir, I'm not sure if you are trying to – you have received my identification, which you've requested, and in the pleadings, you have filed me as G-u-d-d-h, when, in fact, you have my identification, but every pleading you filed with the court is G-u-d-d-h. Okay. So it's, I'm going to say, asked and answered because you already know how to spell my name.
> Q.    Mr. Guddh, we're conducting a deposition.  It's being recorded.  I'm just trying to --
> A.    I understand, sir.  But you are asking me to spell my name after you have my identification.  That's asked and answered.
> Q.    Okay.  I'm asking you to spell your last name.  Are you refusing to do so?
> A.    No, sir.  You have asked me for my identification, which I've already provided to you.  So, I'm going to say that's asked and answered.

(R. Doc. 175-6, pp. 2-3).  Guddh also resisted disclosing simple information about his educational

---

[7]The Court ordered the letter to be placed on the record at that time.  *Id.*

[8]Guddh has contacted the Court through a telephone number with a 305 area code number.  The Court takes judicial notice of the fact that the 305 area code covers an the Miami-Dade County and Monroe County, Florida.

background:

> Q.    Mr. Guddh, how old are you?
> A.    How old am I?  Thirty-Six.
> . . . .
> Q.    Where did you go to college, Mr. Guddh?
> A.    It's been a long time, Mr. Balascio.  It was some university starts with a T.
>       Named T.
> Q.    How long did you attend that school?
> A.    I don't recall.  It was a long time . . .
> . . . .
> Q.    What state were you in when you attended college?
> A.    Maryland, I believe.
> Q.    You believe?  So, you're not sure?
> A.    I just said that.
> Q.    You're not sure what state you were in when you attended college for several
>       years to obtain a degree?
> A.    Mr. Balascio, I answered your question.  Maryland, to my belief.

(R. Doc. 175-6, pp. 6-7).  Guddh also invoked the attorney-client privilege on several occasions,

although his conception of the privilege is questionable at best.  For example, in one exchange

apparently involving Guddh's communication with a lawyer, the following occurred:

> Q.    Mr. Guddh, have you ever met Andrea Vega?
> A.    Privileged information.
> Q.    How – Mr. Guddh, I'm just asking you a "yes" or "no" question.  Have you
>       ever met a person named Andrea Vega?
> A.    Work my attorney does is privileged information.  I cannot comment on my
>       attorney.
> Q.    Is Andrew Vega your attorney?
> A.    Privileged information.  Asked and answered.  You can construe it however
>       you want it.

(R. Doc. 175-6, p. 11).  Guddh continued to assert the attorney-client privilege over situations where

no attorney appeared to be involved:

> Q.    Mr. Guddh, let's look --
> A.    I'm sorry, sir?
> Q.    – Let's look at the name at the bottom of the page . . . . It says the managing
>       member . . . of the company . . . [and] lists the person with the title manager
>       as Marcus – well, it says Marcus, Williams.  So, I'm not sure if that's a

                person named Williams Marcus or Marcus Williams.  Are you familiar with
                that person?

A.      Attorney-client privilege.

Q.      Is that person an attorney?

A.      Attorney-client privilege.

Q.      I don't understand what you're objecting to, Mr. Guddh.  There's nothing
                privileged.

A.      I objected to the question.  Attoney-client (inaudible).  Do not harass me.

(R. Doc. 175-6, p. 12).  Another exchange indicates that to Guddh, the attorney-client privilege can

be used as a bar against "harassment," and that Southern's attorneys have in fact "harassed" and

"butchered" lawyers with whom Guddh has had dealings:

Q.      The identity of your attorney is not privileged, Mr. Guddh.  I'm just asking
                for the name of the attorney with whom you spoke.

A.      Mr. Balascio – Mr. Balascio, you know what, customarily not, but knowing
                the fact that every attorney that I tell you that I talked to you engage in
                harassing that attorney, and then that attorney runs away and says, listen, Mr.
                Guddh, we don't want to work with you because we're being harassed by the
                law firm of Kupperman.  That's not a good indication.  Very hard to find an
                attorney.  And once you find one, you scare them --

Q.      Mr. Guddh, I'm not asking for speeches.  I'm just asking for the name of the
                attorney with whom you spoke while Miss Mata was on the phone.

A.      No.  I will not give you this name.  I have given you the name previously and
                you have butchered it.  I will not give it to you again.

(R. Doc. 175-6, p. 14).  In other portions of his deposition, Guddh asserts the attorney-client

privilege over communications other than persons, and appears to believe that the privilege simply

covers any topic which Guddh would rather not answer.  Guddh's justification for these blanket

assertions is not premised on any reason, but rather a challenge of authority:

Q.      Mr. Guddh, can you give us – when you previously lived in the United
                States, can you give us your home address?

A.      That's privileged information.

Q.      How it is privileged, Mr. Guddh? I'm asking for the home address in a place
                where you no longer live.

A.      Mr. Balascio, it is privileged information.

Q.      What privilege --

A.      I cannot --

|   |   |
|---|---|
| Q. | What privilege protects this information? |
| A. | I cannot give you my Social Security number and I cannot give you my address. Okay? |
| Q. | Mr. Guddh, I'm just asking you to explain what privilege you think protects this information. |
| A. | All I can tell you is privilege.  You want to push it with the court, we'll push it with the court. |

(R. Doc. 175-6, p. 5).  Similarly, Guddh appears to believe that Southern's attorney is not entitled

to request answers to questions, simply because Southern's attorney is not a judge:

|   |   |
|---|---|
| Q. | Are you still involved with the Sunny Mortgage business? |
| A. | No, Mr. Balascio. |
| . . . . |   |
| Q. | Did you sell the business? |
| A. | That's privileged information. |
| Q. | Why is it privileged, Mr. Guddh? |
| A. | Because my attorney was involved. |
| Q. | I'm not asking you to explain or detail any conversations you had with your attorney.  I'm just asking a "yes" or "no" quetion.  Did you or did you not sell -- |
| A. | I will not answer that question.  Whether it's a "yes" or a "no," I will not answer a question in which my attorney involved.  That's privileged information.  That's attorney-client privilege. |
| Q. | Well, I disagree, Mr. Guddh. |
| A. | You can disagree all you want.  You're not a judge.  That's what I've been told. |

(R. Doc. 175-6, pp. 8-9).  Finally, Guddh invites Southern to present his answers directly to the

judge:

|   |   |
|---|---|
| Q. | What happened when you contacted SUSTA? |
| A. | What do you mean, what happened when I contacted SUSTA? Overly broad. Object. |
| Q. | Mr. Guddh, you need to answer my questions, regardless of whether you have an objection to them. |
| A. | I told you, Mr. Balascio, you take the same question to the court.  Okay? I told you, overly broad, object. |
| Q. | Mr. Guddh -- |
| A. | If you're not going to rephrase it, take it to the court.  Okay? |
| Q. | You need to answer my questions, Mr. Guddh. |
| A. | Don't be the judge.  You understand? Do not act like the judge again, ever |

Q.   again.  You understand?
Q.   Mr. Guddh, you're not answering my questions.  What happened when you
     contacted SUSTA?
A.   I said, object.  Overly broad.  If you don't rephrase it, then, you can take it
     to court.  Okay?

(R. Doc. 173-2, pp. 19-20).

The questions are now before the Court.  The Court disagrees with Guddh's assessment of

the situation.  If anything has been "butchered" in the discovery saga to date, it is orderly process

by which parties collect evidence relevant to their dispute, and present that evidence to the trier of

fact for resolution.  Fault for discovery disputes is often shared between adversaries, and the Court

has recognized that at other points in time, Southern shouldered the blame.  *See* (R. Doc. 154, p. 9)

(granting prior motions to quash subpoena duces tecums contained at R. Docs. 128, 129, and 136,

upon finding that the subpoenas were overly broad).  In connection with the motion presently before

the Court, however, the blame falls squarely at Guddh's feet.  Guddh avoided his deposition for

almost four months based on his alleged absence in a remote portion of India (despite the fact that

a letter he mailed to the Court arrived in chambers the following day).  Guddh then demanded that

the deposition take place over telephone.  When finally deposed, he offered testimony which is be

generously characterized as contemptuous and disrespectful not only of his adversary, but also to

this Court and the fact-finding processes which ensures that litigants receive a full and fair hearing

of their grievances.[9]

---

[9]The Court also notes that notwithstanding Guddh's choice not to seek representation, he is not an
unsophisticated person, nor that he is unfamiliar with the deposition process.  Guddh previously stated during the
October 3, 2012 oral argument on R. Docs. 128, 129, and 136 that he deals with so many attorneys for his "various
businesses" that it was impossible to list all of them.  Further, during his deposition, Guddh stated that he had been
deposed before.  (R. Doc. 175-6, p. 4).  Therefore, Guddh should be aware that there are certain questions which an
officer of the Court is entitled to ask, and that Guddh was obligated to respond to.  Therefore, even assuming
*arguendo* that the Court was inclined to allow some latitude for non-compliance with the discovery process due to
Guddh's unfamiliarity with it, such deference is improper here.

Guddh's conduct at his deposition demonstrates not only a brazen disrespect for his adversaries' entitlement to collect information related to their claims, but also stands in stark contrast to Guddh's apparent conception of the discovery to which he is entitled.  For example, Guddh made eleventh-hour demands for depositions, characterized Southern's attorneys as "bullies," accused them of unethical behavior, and threatened to write the court if his unilateral demands were not met - even when such demands pertained to witnesses which Southern had already stated they did not represent, or where Southern's response was arguably made contingent on Guddh's providing information regarding his "attorney," which Guddh never did.  In short, Guddh appears to believe that the rules governing the discovery process do not apply to him.

Having failed to participate in good faith in the discovery process when his participation was requested by an officer of the court, the Court is now obligated to take a more active role to ensure the speedy resolution of a needlessly convoluted dispute.  Therefore, the Court grants Southern's request to re-depose Guddh on November 15, 2012.  The Court will directly oversee Guddh's re-deposition in the courtroom specified below.

The Court also notes that Guddh has been permitted to participate by telephone during earlier discovery hearings, specifically R. Docs. 129 and 136.  (R. Doc. 138).  However, during oral argument Guddh stated at one point that he was distracted by the presence of children; during other periods of the hearing, the Court noted that the phone reception was poor.  Given the difficulties noted by Southern in scheduling Guddh's deposition, as well as the technical difficulties plainly apparent to the Court at oral argument of Guddh's prior motions, the Court finds that allowing any further participation by telephone or any other remote method is inappropriate.  Therefore, Guddh is ordered to appear before the undersigned U.S. Magistrate Judge in person to conduct the

deposition.

Southern has also moved for attorney's fees.  Rule 37 mandates such an award if a Motion to Compel is granted, unless "other circumstances make an award of expenses unjust."  *Id.* at 37(a)(5)(A)(iii).  In light of the foregoing, granting such an award would not be unjust.

### IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Defendant, Sumit Guddh's, ("Guddh") **Motion to Compel Depositions (R. Doc. 164) is GRANTED IN PART and DENIED IN PART.**

It is **GRANTED** as to production of Wiltz and Hingle for deposition.  Plaintiffs, Southern United States Trade Association, et al.'s ("Southern") is ordered to produce Jerry Hingle and Bernadette Wiltz for deposition by Guddh at Southern's attorneys' office on **Friday, November 30, 2012, at 10:00 a.m.**

It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Southern's **Plaintiffs' Motion to Compel Deposition and for Discovery Sanctions (R. Doc. 173)** is **GRANTED**.  Guddh shall appear in person on **Thursday, November 15, 2012, at 2:00 p.m.** in the undersigned U.S. Magistrate Judge's Courtroom, located at 500 Poydras Street, Room B-431, New Orleans, Louisiana, to be deposed by Southern. Guddh's in-person deposition will be monitored by the Court.

**IT IS FURTHER ORDERED** that the Thursday, November 15, 2012 deposition of Guddh shall take place **in person**. Under no circumstances will the Court permit either Southern or Guddh to participate in the deposition via telephone, video-conference, or any other remote means of communication.

It is also **GRANTED** as to attorney's fees.  Southern shall file a motion to fix attorney's fees into the record by **Wednesday, November 28, 2012**, along with: (1) an affidavit attesting to her attorney's education, background, skills, and experience; (2) sufficient evidence of rates charges in other cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2.  Any opposition to the fee application shall be filed no later than **Wednesday, December 5, 2012**, and the motion shall be heard on that date **without oral argument**.

New Orleans, Louisiana, this 8th day of November 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**